| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT [17]**

## I.
## BACKGROUND

Plaintiff Greissy Arrellano filed her Complaint against Defendants UnitedHealth Group, Inc., and Optum Services, Inc. on April 27, 2018. [Doc. # 1-1 ("Complaint").] The Complaint alleged one cause of action under California's Private Attorneys General Act ("PAGA"), which allows for civil penalties stemming from Defendants' alleged conduct that violates various provisions of the California Labor Code ("CLC"). *Id.* Specifically, Plaintiff alleges that Defendants failed to provide required meal and rest breaks, pay overtime wages, pay minimum wages, pay timely wages both during and after employment, maintain adequate employment records, furnish accurate itemized wage statements, and indemnify employees for business-related expenses. *Id.*

Defendants removed the case to this Court on July 13, 2018. [Doc. # 1 ("Notice of Removal").] The parties then filed a bevy of motions, including a Motion to Transfer, a Motion to Strike, a Motion to Dismiss, a Motion to Compel Arbitration, and the instant Motion to Remand [Doc. # 17 ("MTR")]. The MTR is fully briefed. [Doc. ## 19 ("Opp."), 30 ("Reply").] Because Defendants have not met their burden of establishing the amount in controversy required to litigate a diversity action in federal court, remand is appropriate. That conclusion renders moot the remainder of the parties' motions.

## II.
## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1332(a)(1), a district court shall have jurisdiction over a civil action where the amount in controversy exceeds the sum or value of $75,000 and there is complete diversity of citizenship between the parties. Under 28 U.S.C. § 1441(a), an action may

UNITED STATES DISTRICT COURT　　JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-6093-DMG (ASx)** | Date | January 17, 2019 |
|---|---|---|---|
| Title | *Greissy Arrellano v. Optum Medical Group, et al.* | Page | 2 of 8 |

be removed from a state court to a federal district court if the latter would have had "original jurisdiction" over the action had it been filed in that court.

If a complaint does not specify a particular amount of damages and the plaintiff challenges jurisdiction after removal, the removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992) ("If it is *unclear* what amount of damages the plaintiff has sought . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount."). A district court "may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)). "[R]emoval 'cannot be based simply upon conclusory allegations where the [complaint] is silent'" as to the amount in controversy. *Id.* (quoting *Allen*, 63 F.3d at 1335). Nor can a defendant "establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *See Ibarra*, 775 F.3d at 1197.

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," such that there is a "strong presumption" against such jurisdiction. *See Gaus*, 980 F.2d at 566. "Federal jurisdiction [under that statute] must be rejected if there is *any doubt* as to the right of removal in the first instance." *See id.* (emphasis added). Put differently, there is a "strong presumption against removal." *See id.*

## III.
## DISCUSSION

The parties do not dispute that complete diversity exists between them. But they have very different understandings of the amount in controversy. Plaintiff calculates that the correct amount is $14,962.75. Reply at 10. Defendants, on the other hand, arrive at $94,409.96. Opp. at 19. Their dispute centers on three categories of awards Plaintiff may be able to recover if she succeeds: (1) penalties recoverable under PAGA, (2) unpaid wages recoverable under CLC section 558 and 210, and (3) attorneys' fees. The Court discusses each in turn.

UNITED STATES DISTRICT COURT    JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6093-DMG (ASx) | Date | January 17, 2019 |
|---|---|---|---|
| Title | *Greissy Arrellano v. Optum Medical Group, et al.* | Page | 3 of 8 |

### A. PAGA Penalties

Plaintiff first argues that the Court, when determining the amount in controversy, cannot consider any of the penalties available under PAGA because PAGA does not provide for individual claims. MTR at 6. It is true that PAGA plaintiffs bring their causes of action "as the proxy or agent of the state's labor law enforcement agencies," and not on their own behalf. *Reyes v. Macy's, Inc.*, 202 Cal. App. 4th 1119, 1123 (2011). But PAGA plaintiffs' "proxy" role has not prevented courts from considering their personal share of a potential recovery in determining the amount in controversy for jurisdictional purposes. *See Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122-23 (9th Cir. 2013) (holding that PAGA defendants may not *aggregate* all potential plaintiffs' recovery for amount in controversy purposes in order to remove actions to federal court, but assuming, without explicitly deciding, that courts can consider plaintiffs' individual recoveries); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1120 n.1 (9th Cir. 2014) (holding that PAGA plaintiff did not satisfy the amount in controversy requirement when his "portion of any recovery (including fees) would be less than $75,000"). This argument is, therefore, meritless.

The parties' principal dispute in this area centers not on *whether* the Court can consider Plaintiff's potential recovery, but on on *how much* of Plaintiff's potential recovery the Court can consider. The parties appear to agree that the penalties arising from the violations Plaintiff alleges, applied across the 19 pay periods at issue, yield a potential recovery of $51,351.[1] *See* Opp. at 18-19 (chart calculating penalties); Reply at 3 (assuming a $51,351 total), 10 (chart calculating penalties incorporating Defendants' calculations).[2] But they disagree about the percentage of that amount that the Court may consider for amount in controversy purposes.

PAGA requires that any penalties assessed against a defendant "be distributed as follows: 75 percent to the Labor and Workforce Development Agency . . . and 25 percent to the aggrieved employees." Cal. Lab. Code § 2699. Plaintiff argues that this distribution requires the Court to discount 75% of her potential recovery for jurisdictional purposes because that amount goes to the Labor and Workforce Development Agency ("LWDA") and not Plaintiff. MTR at 14. Defendants disagree. Opp. at 6. Both sides claim that *Urbino* supports their position.

---

[1] Defendants reach that amount by adopting the calculations Plaintiff made in her MTR, but extending them over 19, as opposed to 18, pay periods. Opp. at 18-19. Plaintiff then adopts that calculation in her Reply. Reply at 10.

[2] While Plaintiff alleges that most of the CLC violations occurred in every pay period, she argues that not all of them did. MTR at 9. Defendant's chart, which Plaintiff adopts in her Reply, appears to have accounted for these differences. Opp. at 18-19 (accounting for a single violation of section 1174(d) and 1174.5 and 11 pay periods for violations of sections 203 and 2699(f)(2)).

Although *Urbino* explicitly held only that courts may not aggregate PAGA plaintiffs' *pro rata* share with that of other aggrieved employees for purposes of determining the amount in controversy, Plaintiff relies on the following language to argue that *Urbino* prevents courts from aggregating a plaintiff's share with LWDA's share:

> Defendants contend however that the interest Urbino asserts is not his individual interest but rather the state's collective interest in enforcing its labor laws through PAGA. . . . To the extent Plaintiff can—and does—assert anything but his individual interest, however, we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction. The state, as the real party in interest, is not a "citizen" for diversity purposes.

*Urbino*, 726 F.3d at 1122–23. She contends that because *Urbino* held that California is not a "citizen" for diversity purposes, the Court should not consider LWDA's 75% share of any recovery to determine the amount in controversy. She also cites a multitude of district court cases that have employed that reasoning for excluding LWDA's share from consideration. *See* MTR at 15-16 (collecting cases); *see e.g., Steenhuyse v. UBS Fin. Servs.,* Inc., 317 F. Supp. 3d 1062, 1069 (N.D. Cal. 2018) ("The Court here agrees that *Urbino*, as well as the decisions in *Lopez* and similar district court decisions, support the conclusion that the 75% share of any PAGA recovery to be paid to the LWDA should not be aggregated with plaintiff's 25% share to establish the amount in controversy threshold.").

Defendants, on the other hand, cite their own series of district court opinions interpreting *Urbino* to hold precisely the opposite. *See* Opp. at 6-8 (collecting cases); *see e.g., Patel v. Nike Retail Servs., Inc.,* 58 F. Supp. 3d 1032, 1048 (N.D. Cal. 2014) ("For these reasons, the entire amount of PAGA penalties attributable to Patel's claims count towards the amount in controversy."). In short, the Ninth Circuit has not conclusively resolved this exact issue, and the district courts are deeply split.

Defendants' preferred approach would put the full $51,351 in controversy, while Plaintiff's approach would reduce that amount to $12,837.75. The Court need not wade into the split of authority, however, because even assuming Defendant is correct—and the Court must consider the full $51,351—Defendants have still not shown by a preponderance of the evidence that there are other amounts in controversy sufficient to push Plaintiff's potential recovery past the $75,000 threshold.

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6093-DMG (ASx) | Date | January 17, 2019 |
|---|---|---|---|
| Title | *Greissy Arrellano v. Optum Medical Group, et al.* | Page | 5 of 8 |

### B. Unpaid Wages

Defendants also argue that Plaintiff may recover $7,456.18 in unpaid wages under CLC section 558, and an additional 25% of those wages under CLC section 210. Opp. at 14. They claim that places another $9,320.22 in controversy. *Id.* Defendants did not cite, however, any documents in the record or any other authority indicating that Plaintiff would pursue that additional 25%— they only argue that "Plaintiff *may also* seek to recover an additional 25%." *Id.* Indeed, Plaintiff argues in response that she is not seeking the 25% under section 210, and made no mention of doing so in her Complaint. Reply at 10. Defendants' assumption regarding the additional 25%, therefore, is the type of "conclusory allegation where the [complaint] is silent" that *Singer* removed from the amount in controversy consideration. *Singer*, 116 F.3d at 377. The unpaid wages that the Court may consider are, at most, $7,456.18.

Plaintiff also argues that the Court should exclude the underlying wages recoverable under section 558 because Defendants are judicially estopped from using the section 558 wages for amount in controversy purposes since they argued in their Motion to Compel Arbitration that the section 558 claim is subject to arbitration. Reply at 9. But, once again, the Court need not resolve the judicial estoppel dispute because, even assuming for the sake of argument that the $7,456.18 in unpaid wages is in controversy, Defendants have not carried their burden of showing enough attorneys' fees in controversy to reach $75,000.01.

### C. Attorneys' Fees

Once again, the parties arrive at very different calculations of the attorneys' fees in controversy. Defendants claim that $33,739.64 in fees is in controversy, while Plaintiff claims that number is as low as $2,125. Opp. at 19; Reply at 10. Their disagreement begins with what fees the Court can consider.

Plaintiff argues that the Court can consider only those fees incurred at the time of removal. MTR at 17-20. Defendant contends that courts appropriately consider all attorneys' fees that are likely to accrue over the course of a case. Opp. at 14-16. Defendant is correct. The Ninth Circuit recently held that, in the damages context, the amount in controversy is not limited to only the damages incurred before removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018). Instead, the jurisdictional threshold takes into account what plaintiffs may recover for violations after removal as well. *Id.* at 417 ("That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy."). The Ninth Circuit then applied *Chavez*'s reasoning to attorneys' fees in *Fritsch v. Swift Transportation Co. of Arizona,*

*LLC*, 899 F.3d 785, 795 (9th Cir. 2018) ("*Chavez*'s reasoning" related to damages "clearly applies to attorneys' fees."). The attorneys' fees calculation, therefore, properly includes all fees likely incurred over the life of the case. But, in PAGA cases, that amount must be reduced to reflect only Plaintiff's *pro rata* share of those fees. *Patel*, 58 F. Supp. 3d at 1049 ("[O]nly the portion of attorney's fees attributable to [the plaintiff's] claims count towards the amount in controversy.").

Defendants offer two alternative theories for calculating the attorneys' fees in controversy. Neither pushes the total amount over $75,000. First, Defendants state in the Notice of Removal that a conservative estimate of hours spent on this case would yield $63,750 in attorneys' fees using the hourly rate Plaintiff's counsel received in another case in Los Angeles County Superior Court. Notice of Removal at ¶ 11; Opp. at 16. Dividing that amount by the number of other aggrieved employees that the parties seem to agree exist—30—yields a *pro rata* attorneys' fee figure of $2,125.[3] That amount, combined with the other $58,807.18 that the Court assumes is in controversy, is still well short of the required $75,000.01.

Defendants' second theory is that the Court should assume a fee award of 25% of the total potential recovery. They cite a string of district court decisions that use 25% of the total potential recovery as an estimate for jurisdictional purposes, but they also admit that *Fritsch* held that a "per se" 25% rule is not required by law. Opp. at 16; *Fritsch*, 899 F.3d at 796 ("we reject [defendant's] argument that we should hold that, as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery"). Given Defendants' own submission of the $63,750 amount as a reasonable yardstick of the potential fees in this case, the Court is hesitant to apply the 25% rule here. *Fritsch*, 899 F.3d at 796 ("[T]he defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation.").

Even if the Court were inclined to include 25% of the total recovery, however, there would be no evidence-based way to calculate that amount based on Defendants' submissions. Defendants attempt to calculate the total potential recovery by adding Plaintiff's share of PAGA penalties and Plaintiff's unpaid wages, and multiplying that amount by 30 to account for the remaining 29 aggrieved employees. They then add the total PAGA penalties of the other 29

---

[3] Thirty employees was originally Plaintiff's estimate. MTR at 21. Defendants do not submit any employee records, timesheets, pay stubs, or other evidence indicating a different number. Indeed, Defendants adopt 30 as the number of employees when making their own calculations. Opp. at 17.

aggrieved employees for the next 29 pay periods,[4] projecting that this case will be ready for trial in one year. Using that calculation, the total potential award is $4,048,189.15, the 25% attorneys' fee award is $1,102,189.15, and Plaintiff's *pro rata* share is $33,739.64. Opp. at 17-18.

But Defendants' calculations rest almost entirely on unsupported assumptions. First, despite acknowledging that "Plaintiff alleges she has not suffered any [CLC] violations after removal," Defendants make two suspect assumptions: (1) that all of the 29 other employees have suffered CLC violations after removal, and (2) that these employees suffered those violations in *every pay period since removal*. Opp. at 17. Defendants provide no evidence to support these assertions. Nor do they provide any evidence that 29 employees even worked for them during the post-removal period. They also assume, without citing any comparable cases or other evidence, that the case will take one year to proceed to trial. Plaintiff disputes that timeline, noting that wage and hour class actions frequently settle before trial and that *Fritsch* acknowledged that likely settlements can play a role in courts' jurisdictional estimates of attorneys' fees. Reply at 7; *Fritsch*, 899 F.3d at 795 ("[D]istrict courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement."). Indeed, *Defendants* cite four cases since 2013 that Plaintiff's counsel has settled before trial. Opp. at 17-18.

In other words, almost every step of Defendants' proposed fee calculation rests on "speculation and conjecture" unmoored from any actual evidence. *See Ibarra*, 775 F.3d at 1197. Moreover, as Plaintiff's employers, Defendants presumably possess employment records that could have revealed the information needed to make an informed calculation. Speculating about potential fees while submitting none of those records is not enough to show by a preponderance of the evidence that the amount in controversy requirement is satisfied.

In sum, even assuming every meaningful variable in Defendants' favor (as the Court has in this Order), Defendants have not carried their burden to show that the Court has subject matter jurisdiction over this action.

---

[4] Defendants presumably only account for 29 employees' violations beyond the date of removal because they acknowledge that Plaintiff alleges she has not suffered any CLC violations after removal. Opp. at 17.

UNITED STATES DISTRICT COURT  JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-6093-DMG (ASx) | Date | January 17, 2019 |
|---|---|---|---|
| Title | *Greissy Arrellano v. Optum Medical Group, et al.* | Page | 8 of 8 |

## IV.
## CONCLUSION

In light of the foregoing, Plaintiff's Motion to Remand [Doc. # 17] is **GRANTED** and this case is hereby **REMANDED** to Los Angeles County Superior Court. The pending Motion to Transfer [Doc. # 13], Motion to Strike [Doc. # 12], Motion to Dismiss [Doc. # 21], Motion to Compel Arbitration [Doc. # 14] are **DENIED without prejudice** as moot.

**IT IS SO ORDERED.**